# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

ALTHEA MORRELL,

    Plaintiff,

v.                                                                     Case No. 8:10-cv-1459-T-TBM

MICHAEL J. ASTRUE,
**Commissioner of the United States**
**Social Security Administration,**

    **Defendant.**
                                        /

## O R D E R

The Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits and Supplemental Security Income payments. The Plaintiff urges that her case be reversed and remanded for further consideration and an award of benefits because the ALJ erred by failing to find that Plaintiff suffered from the severe impairments of cervical degenerative disc disease and carpal tunnel syndrome and failed to present a complete hypothetical question to the VE. For the reasons set out herein, the decision is affirmed.

A.

Plaintiff was forty-three years old at the time of her administrative hearing in December 2008. Plaintiff has a high school education with additional vocational training. Her past relevant work was as a certified nursing assistant. Plaintiff applied for disability benefits and Supplemental Security Income payments in May 2006, alleging disability as of

April 11, 2006, by reason of pain in her back, hands, and feet. The Plaintiff's applications were denied originally and on reconsideration.

A de novo hearing was conducted by an Administrative Law Judge (ALJ) on December 4, 2008. Plaintiff, who was represented at the hearing, testified that she is unable to work because of irritable bowel syndrome, hemorrhoids, neck and low back pain, and headaches. Plaintiff stated she has two protruding discs in her neck that cause headaches, difficulty lifting her head, and sensitivity to light. She also has a protruding disc in her lower back that presses on the sciatic nerve. Plaintiff takes Malocam and Tramadol to help with her headaches and pain. She also takes a "water pill" which requires her to visit the restroom approximately ten to eleven times a day. Plaintiff testified that her IBS is mostly under control but does flare up sometimes, her hypertension is stable with medication, and the hemorrhoids are under control. She is presently waiting to have surgery for carpal tunnel syndrome on both hands. Plaintiff testified that she is unable to hold anything for long periods of time; her hands cramp up and hurt. She stated she also has difficulty sleeping because of numbness in her hands and arms and has problems staying awake during the day because some of the medications make her sleepy.[1] She claims she is going to be referred to a hand specialist, but there is a hold up because of insurance reasons. By her account, they want to send her to a pain management doctor in Tampa, but that is too far for her to go.

---

[1] However, upon questioning by her counsel, she testified that if she had to work, she could stay awake a full eight-hour day, but she would have difficulty concentrating.

Plaintiff worked for six months in 2006 to 2007. She went back to work in order to support herself, but eventually had to quit because she was in a lot of pain. Plaintiff estimates she can stand for about five to ten minutes, sit about twenty to thirty minutes, and lift or carry approximately fifteen pounds. She indicated she would need a bathroom break about four to six times during an eight-hour period. (R. 32-51).

The ALJ next took testimony from Teresa Manning, a vocational expert (VE). The VE first classified Plaintiff's prior work as a CNA as medium exertional, semi-skilled, and her work as a companion as light, semi-skilled. In pertinent part, the VE testified on a hypothetical question which assumed a person of Plaintiff's age, education and work history capable of lifting twenty pounds occasionally and ten pounds frequently, able to stand, walk, and sit for about six hours in an eight-hour workday, but would need a sit/stand option at will, limited to occasional postural activity, no exposure to extreme temperatures, should not work at unprotected heights or with hazardous machinery, and should have bathroom facilities regularly available. On such hypothetical, the VE opined that such individual could perform work as a general office clerk, unit clerk, and teacher's aide. Should the additional limitation of lifting ten pounds occasionally or frequently be added, the VE opined such an individual could perform work as a diet clerk, blood bank clerk, and calendar control clerk. Upon questioning by Plaintiff's counsel as to whether the jobs identified required frequent use of the hands for feeling, fingering, handling, and grasping for one-third to two-thirds of the day, the VE testified that all of the jobs did. (R. 52-59).

On January 28, 2009, the ALJ determined that while Plaintiff has severe impairments related to chronic back pain with radiculopathy, peripheral neuropathy in bilateral hands and feet, hypertension, obesity, dysmenorrhea and menorrhea, she nonetheless had the residual functional capacity to perform light exertional work.[2] Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to her in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 14-26). The Appeals Council considered additional evidence and denied Plaintiff's request for review.

B.

Consideration of the Plaintiff's claims is governed by certain principles. In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are

---

[2]Light work is defined as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job in this category may require a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, the claimant must have the ability to do substantially all of these activities. 20 C.F.R. § 404.1567(b).

4

demonstrable by medically acceptable clinical and laboratory diagnostic techniques."
*Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that

the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

In sum, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

C.

Plaintiff initially complains the ALJ erred by failing to find that Plaintiff suffered from the severe impairments of cervical degenerative disc disease and carpal tunnel syndrome. Plaintiff argues that the ALJ's characterization of her degenerative disc disease as "chronic back pain" attempted to diminish the significance of her condition. Plaintiff complains that the ALJ improperly relied on State agency medical reports dating back to 2006, when more recent records reflected a worsening condition. She urges that medical evidence in 2007 revealed she was treating for numbness in the hands, low back pain, leg pain, and she was diagnosed with carpal tunnel. In 2008 she was found to suffer from a disc protrusion at C5-6 "which could affect the exiting right C6 nerve root." At that time, she was still suffering from numbness in her hands and pain in her lower back. In support of her claim, she cites to the records of her treating doctor, Dr. Fadi Saba, who indicated she could only sit two hours or stand only one hour in an eight-hour workday and had significant limitations in doing repetitive reaching, handling or fingering. (Doc. 20 at 5-9).

The Commissioner responds that the ALJ found in favor of Plaintiff at step two of the sequential evaluation by finding several severe impairments and then proceeded with the other steps of the evaluation and thus there could be no error at step two. Further, the Commissioner submits that the ALJ properly considered all of Plaintiff's medical records and, in fact, found that Plaintiff suffered from severe impairments regarding her back and hands regardless of how those conditions were described. The Commissioner urges that the ALJ used the correct standard to evaluate the severity of Plaintiff's impairments, but Plaintiff failed to show her conditions caused greater limitations than those assessed by the ALJ. (Doc. 22 at 4-5).

The Social Security Regulations set forth a five-step sequential evaluation process the Commissioner must follow in determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). The claimant bears the burden of establishing a prima facie case of disability at steps one through four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1241 n.10 (11th Cir. 2004). Step one requires the claimant to demonstrate that he is not presently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). At step two, the claimant must show that he has a medically severe impairment or combination of impairments. *Id.* at §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, if a claimant can show that his impairment meets or is equivalent to a listed impairment, he is presumed to be disabled and entitled to benefits. *Id.* at §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant is unable to demonstrate such, he continues to step four, which requires the claimant to show that his impairment or combination of impairments prevents him from performing his

past work. *Id.* at §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five. *Phillips*, 357 F.3d at 1241, n.10. At step five, the Commissioner must show that the claimant retains the residual functional capacity to perform work in the national economy, given his age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary. 20 C.F.R. §§ 404.1520, 416.920.

At step two of the five-step evaluation process prescribed by the regulations, the ALJ is called upon to determine whether a claimant's impairments are severe. 20 C.F.R. §§ 404.1520, 416.920. The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987) (citing 20 C.F.R. §§ 404.1521(b), 416.921(b)).[3] A "[c]laimant need show only that her impairment is not so slight and its effect not so minimal." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). This inquiry is a "threshold" inquiry. It allows only claims based on the slightest abnormality to be rejected. *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984). However, the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together

---

[3]Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling, as well as capacities for seeing, hearing, and speaking; understanding, remembering and carrying out simple instructions; responding appropriately to supervisors and fellow employees and dealing with changes in the work setting; and the use of judgment. *Id.*

qualify as severe, is enough to satisfy the requirement at step two. *Jamison v. Bowen,* 814 F.2d 585, 588 (11th Cir. 1987).

Here, at step two, the ALJ found that the Plaintiff had the following severe impairments: "chronic back pain with radiculopathy, peripheral neuropathy in bilateral hands and feet, hypertension, obesity, dysmenorrhea and menorrhea." (R. 16). Thus, to the extent that Plaintiff suggests error at step two of the five-step evaluation process for the ALJ's failure to identify degenerative disc disease and carpal tunnel syndrome as severe impairments, Plaintiff's claim fails.

Plaintiff also urges that the ALJ's failure to identify degenerative disc disease and carpal tunnel syndrome as severe impairments prevented his full consideration of her impairments in combination as required by applicable law. She urges her hands go numb, cramp and her fingers hurt when she tries to hold things and that such is supported by the findings and opinions of Dr. Saba. Further, evidence reveals a disc protrusion at C5-6 which could affect the exiting right C6 nerve root. She accuses the ALJ of attempting to diminish the severity of her back condition, radiculopathy, and peripheral neuropathy by labeling her condition as mere "chronic back pain" and thereby failed to take into consideration her worsened condition caused by her cervical degenerative disc disease. Since the ALJ failed to fairly consider these conditions, which in combination with her other impairments rendered her disabled, she urges the case be remanded for full consideration of all her impairments.[4]

---

[4] The Act and pertinent case law require that the ALJ consider each impairment, as well as the combined effect of all a claimant's impairments. 42 U.S.C. § 423(d)(2)(B); *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986).

I have carefully reviewed the decision in light of the whole of the medical record and conclude that there is no error requiring a reversal and remand on the arguments presented. In short, the decision reflects the ALJ's fair review of the medical evidence, including that related to claims of carpal tunnel and the evidence on the cervical spine, and concluded that Plaintiff's impairments imposed only slight limitations on function. Such conclusion is simply not demonstrated to be erroneous on this appeal.

A review of the decision reveals the ALJ's consideration of the entire medical record before him. While Plaintiff complains that the ALJ relied heavily on a 2006 report of a consultative examiner when more recent records document what she urges is a worsening condition, my review suggests the ALJ's decision was based on the whole of the record and that such was fairly assessed. The consultative examination in 2006 was important to the ALJ's review but not inappropriately so and not to the exclusion of the other records. She urges that an MRI of her cervical spine done June 4, 2008, revealed a disc protrusion at C5-C6 which "could affect the exiting right C6 nerve root." (R. 304). Such is true, but standing alone, this reveals practically nothing about the functional import of such finding. Subsequent records reveal Plaintiff's pain in her low back was decreasing on June 28, 2008, (R. 303) and it was noted that she was feeling a little better at her appointment on July 31, 2008 (R. 302). While I do not doubt that Plaintiff experiences neck and back pain and it is evident that her cervical and lumbar conditions were well-documented in the medical record before the ALJ,

*see, e.g.,* (R. 302, 303, 304, 305, 313-315, 357, 363, 365, 366), the ALJ's decision reflects he did consider these later records from 2007 and 2008.[5] (R. 20-24).

Significantly, after review of the medical evidence, the ALJ credited Plaintiff with impairments which could account for her neck and back pain and her hand numbness but not to the extent claimed. Thus, he noted that ". . . the claimant does have a medically determinable impairment which may limit the claimant's ability to function somewhat . . . , [but that] she does not appear to be more than slightly limited." (R. 23). Plaintiff does not demonstrate from the record that she was more limited than ultimately assessed regardless of how her impairments were described. As reflected in the decision, the evidence of record from examining or treating doctors does not show that any physician precluded Plaintiff from work activity or placed any restrictions on her ability to function other than those restrictions

---

[5] Records from Johnnie Ruth Clark Community Health Center and Professional Health Care of Pinellas Inc., were fully reviewed and lend considerable support to the ALJ's conclusions. They also significantly undermine her claims of any additional functional limitations because of carpal tunnel and cervical disc protrusion not otherwise assessed by the ALJ. By my review of this same evidence, these records document Plaintiff's assorted pain complaints and document a disc protrusion at C5-6 which supports her claim of neck and right shoulder pain, but little more. These records also show some complaints of hand numbness and notations for carpal tunnel especially in 2007 and into 2008. Later notes do not mention any such complaints. Thus, there is no mention of her CTS or any complaints regarding her hands in her visits of July 31, 2008; October 3, 2008; November 28, 2008; or December 24, 2008. *See* (R. 302, 357, 363, 366). I can find no claim by Plaintiff regarding reduced grip strength or dexterity in these records. Of significance, no physician placed any functional limitation on the Plaintiff that she could not work because of the problems either with her neck and shoulders or with her hands. Plaintiff was due to have release surgery on her hands but it appears that she never undertook to have the same. Otherwise, her treatment was conservative and when referred out to specialists, she did not follow up. Neurological findings, when made, were "intact" and no limitations were imposed on Plaintiff. Importantly, these records fail to reveal any work limitations or other restrictions not ultimately assessed by the ALJ.

given by Dr. Shyngle in 2006. Clearly, the ALJ's conclusions are well supported by Dr. Shyngle's examination and findings.[6]

Plaintiff cites to Dr. Saba's opinion in 2009 that would arguably limit Plaintiff from sitting and standing long enough to complete a workday. (Doc. 20 at 7-8). However, it is unclear whether the January 2009 functional assessment (R. 370) was actually before the ALJ prior to his decision. It is not mentioned and Plaintiff does not argue it further. In any event, the opinion is somewhat contradictory concerning Plaintiff's ability to sit, stand and walk, and can be read to support the ALJ's assessment at least in part. His limitations on fingering and handling are nowhere documented in his treatment notes.

After full review of this record, Plaintiff's complaints regarding her cervical spine and numbness in her hands, by whatever name, were fully considered and assessed. Her hand complaints were intermittent and dated back to several years before her carpal tunnel diagnosis, and there is nothing to indicate that such condition limited her ability to perform work as a CNA which she did, even in 2007. While it is true that Plaintiff was later diagnosed with carpal tunnel syndrome and had evidence of a disc protrusion in her neck in 2008, a mere diagnosis does not necessarily equate to a disabling condition. *See, e.g., Wind v. Barnhart*, 133 Fed. Appx. 684, 690-91 (11th Cir. 2005) (ALJ correctly determined obesity non-severe

---

[6] By this examiner's evaluation, Plaintiff showed full range of motion (rom) in the cervical spine, shoulders, elbows, forearms and wrists, and hips, but reduced rom in the lumbar spine. Strength was 5/5 in upper and lower extremities. No motor or sensory deficits were noted. There was no cyanosis, clubbing, or edema or significant varicosities or trophic changes nor muscle atrophy evident in the extremities either. Further, the doctor noted that hand and finger dexterity was intact and grip strength was 5/5 bilaterally. (R. 262-68).

because it did not cause further degradation of her residual functional capacity). The suggestion that the ALJ did not fairly consider these conditions individually or in combination is simply not borne out on my review.

Thus, because I find that the ALJ fairly reviewed and assessed the medical evidence, including that related to Plaintiff's cervical spine and her hands, and because the conclusions about Plaintiff's functional capacity are supported by substantial evidence, Plaintiff is not entitled to relief on her first claim.

By Plaintiff's second claim, she urges the ALJ erred by failing to present a complete hypothetical question to the vocational expert to include the limitation on fingering, handling, and grasping. In light of the Plaintiff's diagnosis of carpal tunnel syndrome in 2007, coupled with her testimony of her inability to hold and grasp objects, the ALJ erred in failing to include these limitations in posing a hypothetical to the VE, and thus she urges a remand is warranted. (Doc. 20 at 9-11).

In response, the Commissioner submits that given the objective medical evidence regarding Plaintiff's hands and upper extremity functioning, the ALJ did not need to include significant limitations of reaching, handling and fingering in his RFC nor in his hypothetical to the VE. The hypothetical to the VE adequately portrayed Plaintiff's credible limitations and was otherwise supported by substantial evidence. The ALJ noted Plaintiff's hand condition in his thorough review of the medical evidence and concluded Plaintiff could perform a range of light work. The Commissioner urges that the Plaintiff failed to show she had limitations greater than what the ALJ assessed, and thus the ALJ was not required to

include in his hypothetical unsupported limitations regarding Plaintiff's fine manipulation functioning. (Doc. 22 at 10-15).

The Plaintiff is correct that case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* at 1562 (quoting *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)). However, an ALJ need not include findings in the hypothetical that the ALJ has properly discounted or rejected as unsupported. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

As noted above, a review of the medical record reveals that there were repeated complaints by Plaintiff for numbness and pain in Plaintiff's hands, both before and after the diagnosis of carpal tunnel syndrome. Notwithstanding these complaints, I found no evidence that Plaintiff complained to any health care provider of any functional limitations by reason of the condition. Significantly, at the time of the hearing, no doctor had determined or placed any work-related limitation on Plaintiff's functional ability to finger, handle or grasp as a result of this condition. As noted, after a time, Plaintiff's complaints regarding her hands tapered off, and later records before the Appeals Council indicated that her peripheral neuropathy was improved with medication. Contrary to Plaintiff's claims, the evidence before the ALJ from Dr. Shyngle and two state agency doctors supported no such limitations as here

14

proposed by Plaintiff. Given the lack of evidence to support a functional limitation on the basis of her hand numbness or diagnosis of carpal tunnel and given the ALJ's credibility assessment, which is not here challenged by the Plaintiff, I find no error in the ALJ's purported failure to include such limitation for fingering, handling, and grasping in his hypothetical to the VE.

D.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the case.

**Done and Ordered** at Tampa, Florida, this 30th day of September 2011.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record